**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| PHILIP CARRINGTON, : <br> : <br> Plaintiff, : <br> : Civil Action No. 15-7030 (ES) (SCM) <br> v. : <br> : OPINION <br> CITY OF JERSEY CITY, et al., : <br> : <br> Defendants. : | |

**SALAS, DISTRICT JUDGE**

Pending before the Court are Defendants' motion for summary judgment (D.E. No. 98) and *pro se* Plaintiff's cross-motion for summary judgment (D.E. No. 100). The Court has jurisdiction under 28 U.S.C. § 1331. Having considered the parties' submissions in support of an in opposition to the pending motions, the Court decides the motions without oral argument under Federal Rule of Civil Procedure 78(b). For the reasons below, the Court GRANTS-IN-PART Defendants' motion, DENIES-IN-PART Plaintiff's cross-motion for summary judgment, and RESERVES its determination on certain claims pending submission of the parties' supplemental briefing.

**I.     BACKGROUND**[1]

***The Parties.***  *Pro se* Plaintiff Philip Carrington ("Plaintiff") filed a Complaint against thirteen Defendants comprising City of Jersey City ("Jersey City"); the Jersey City City Council ("City Council"); the Internal Affairs Unit; Police Director James Shea ("Director Shea"); Director

---

[1] The Court distills these facts from Defendants' Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment (D.E. No. 98-1 ("Def. SMF")), Plaintiff's Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Summary Judgment (D.E. No. 100-1 ("Pl. SMF")), and exhibits accompanying the parties' submissions. Unless otherwise noted, these background facts are undisputed.

Alvin Pettit; Sergeant James Crecco ("Sergeant Crecco"); Officers N. Gerand, S. Collier, Sean Mullahey, Ramon Peguero, Hennessy, and Comandatore ("Police Officer Defendants"); and Assistant Corporation Counsel John Hallanan (collectively, "Defendants"). (*See* D.E. No. 1 ("Compl.") at 1-2).

*Facts.* Plaintiff brings this action in connection with summonses he received in March 2011 and September 2014 for serving food without a license and an eviction from property he rented from Jersey City to run a day-care center. (*See generally id.*).

Plaintiff, a Barbadian American, operated a food truck. (*Id.* ¶ 22). He was issued summonses for serving food without a proper license on March 4, 2011 ("2011 Summonses") and September 10, 2014 ("2014 Summonses") (together, the "2011 and 2014 Summonses"). (Pl. SMF ¶¶ 34-35). Officers Gerand and Collier issued the 2011 Summonses. (*Id.* ¶ 34). Sergeant Crecco ordered and Officer Mullahey issued the 2014 Summonses. (*Id.* ¶ 35).

Plaintiff also owned and operated the Remarkable Mossi Youth Council (the "Remarkable Mossi"), a day-care center. (*Id.* ¶¶ 7, 18, 45). Plaintiff operated the Remarkable Mossi out of a complex owned by Jersey City and located at 134-150 Martin Luther King Jr. Drive in Jersey City, New Jersey, known as the "Bethune Center." (*Id.* ¶ 7; Def. SMF ¶ 5). Plaintiff rented the Bethune Center in accordance with City Council Resolution 05-556, dated July 13, 2005, which authorized the Remarkable Mossi to rent a room at the Bethune Center from July 1, 2005 to August 31, 2005. (Def. SMF ¶ 5). The lease does not appear to have been extended. (*See* D.E. No. 100-3 at 33 (June 11, 2015 letter from Jersey City Business Administrator to Plaintiff stating that Plaintiff's "prior License expired in September of 2005 and there is no record of it ever having been extended")). In August 2015, Pettit posted several eviction notices at the Remarkable Mossi in the Bethune Center and alerted Plaintiff's customers they would have to find a new day-care center

because the Remarkable Mossi was being evicted. (Pl. SMF ¶ 26). Plaintiff continued to operate the Remarkable Mossi out of the Bethune Center until his eviction on January 4, 2016. (*Id.* ¶ 32).

***Allegations.*** Plaintiff maintains that he received the 2011 and 2014 Summonses and was unlawfully evicted from the Bethune Center because of his race and nationality. (*See* Compl. ¶ 55 at 10; ¶¶ 56-57, 59; ¶ 61 at 13-14). On September 23, 2015, Plaintiff filed a suit in this Court alleging arbitrary and capricious action (Count I); violation of 42 U.S.C. § 1983 (Count II); malicious prosecution (Count III); and violation of the New Jersey Law Against Discrimination ("NJLAD") (Count IV). (*See id.* ¶¶ 45-61). Specifically, Plaintiff alleges that Defendants violated his civil rights by arbitrarily and capriciously issuing the 2011 and 2014 Summonses because Plaintiff had a valid license to serve food on both occasions. (*Id.* ¶¶ 45-50 at 8-9). Plaintiff further alleges that Defendants prevented and disrupted Plaintiff's business, thereby denying Plaintiff "equal protection of the law and discriminat[ing] against the plaintiff on the basis of race" in violation of § 1983 and the New Jersey Constitution. (*Id.* ¶¶ 51-57 at 9-11). Next, Plaintiff alleges that certain police officers maliciously prosecuted him "by issuing summons [sic] requesting the plaintiff to appear in court when there was no violation of law" and with "an absence of probable cause." (*Id.* ¶¶ 58-65 at 11-12). Finally, Plaintiff asserts a NJLAD claim against all Defendants alleging that "[D]efendants unlawfully discriminated against the plaintiff on the basis of race and violated LAD by selective enforcement and prosecution of state and municipal laws and ordinances." (*Id.* ¶¶ 66-67 at 12-13; ¶¶ 55-61 at 13-14).

***State Court Actions.*** In his Complaint, Plaintiff asserts that he "now brings this action before this court after unsuccessfully exhausting all local municipal remedy [sic] and the defendant [sic] continue to harassing [sic] plaintiff while legal actions are file [sic] against them in the State

3

Superior Court." (*Id.* ¶ 15). Plaintiff's claims appear to have been addressed in three separate New Jersey Superior Court actions and are summarized below. (Def. SMF ¶¶ 6-43).

On March 25, 2015, Plaintiff filed a complaint in the New Jersey Superior Court, Hudson County, bearing docket number HUD-L-1310-15 ("*Carrington I*"), against City Council President Rolando Lavarro, Chief Health Inspector J. Happy Boar, Sergeant Crecco, and Officer Mullahey, alleging that the 2011 and 2014 Summonses were arbitrary, unreasonable, and deprived Plaintiff of due process rights under the Fourteenth Amendment. (*Id.* ¶¶ 7-12; D.E. No. 98-7 at 1-12). Plaintiff also asserted a claim for malicious prosecution. (*Id.* ¶¶ 7-12; D.E. No. 98-7 at 1-12). The defendants filed a motion to dismiss the complaint in lieu of answer, which Plaintiff opposed. (Def. SMF ¶ 13; D.E. No. 98-9 at 3). "After considering the arguments and facts presented by the parties," the Superior Court dismissed the complaint without prejudice on June 12, 2015. (Def. SMF ¶ 14; D.E. No. 98-9 at 2-3).

On August 28, 2015, Plaintiff filed a new complaint in the New Jersey Superior Court, Hudson County, bearing docket number HUD-L-3611-15 ("*Carrington II*"), against Jersey City, the City Council, the City Council President Rolando Lavarro, Chief Health Inspector J. Happy Boar, Sergeant Crecco, and Officer Mullahey. (Def. SMF ¶¶ 15-24; D.E. No. 98-10 at 4-20). In Count I of this complaint, Plaintiff alleges arbitrary and capricious action by Jersey City's Chief Health Inspector, H. James Boar, and that Plaintiff received a series of "arbitrary, capricious and unreasonable summonses." (Def. SMF ¶¶ 16-17). In Count II, Plaintiff alleges malicious prosecution in connection with the 2011 and 2014 Summonses. (*Id.* ¶ 19). In Count III, Plaintiff alleges a claim for violations of NJLAD. (*Id.* ¶ 20). Specifically, Plaintiff asserts his NJLAD claims in the August 28, 2015 complaint "against Jersey City, Jersey City Police Department, Sergeant James Crecco, Officers Sean Mullahey, officer Hennessey, officer Ramon Peguero and

4

Officer Comandatore." (D.E. No. 98-10 at 16). On October 23, 2015, "[a]fter considering the arguments and facts presented by the parties," the Superior Court dismissed the August 28, 2015 complaint with prejudice. (D.E. No. 98-12 at 2-3).

On September 1, 2015, Jersey City filed a verified complaint in the Superior Court of New Jersey, Hudson County, bearing docket number HUD-LT-11861 ("*Carrington III*"), against the Remarkable Mossi. (Def. SMF ¶ 25; D.E. No. 98-13 at 2-9). In particular, Jersey City sought to evict the Remarkable Mossi from the Bethune Center for failure to pay rent in the amount of $162,594.96 and sought a judgment for possession of the property occupied by the Remarkable Mossi. (Def. SMF ¶ 25; D.E. No. 98-13 at 2-9). On November 2, 2015, the Remarkable Mossi (represented by attorney Neal E. Brunson) and Jersey City (represented by Defendant Hallanan) entered into a Consent Order to Enter Judgment of Possession (the "consent order"), whereby the Remarkable Mossi agreed to voluntarily leave the Bethune Center premises by December 31, 2015. (D.E. No. 98-14 at 2-4).

*Pending Motions.* On November 21, 2017, Defendants filed a motion for summary judgment. (D.E. No. 98-2 ("Def. Mov. Br.")). Plaintiff filed a cross-motion for summary judgment on the same date. (D.E. No. 100-2 ("Pl. Mov. Br.")). The parties opposed the pending motions. (D.E. No. 107 ("Pl. Opp. Br.");[2] D.E. No. 108 ("Def. Opp. Br.")). They also submitted replies in further support of their motions. (D.E. No. 110 ("Def. Reply Br."): D.E. No. 109 ("Pl. First Reply Br."); D.E. No. 111 ("Pl. Second Reply Br.")). The matter is now ripe for resolution.

## II.    LEGAL STANDARD

A court shall grant summary judgment under Federal Rule of Civil Procedure 56 "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[2] For this document, the Court refers to the ECF-generated page numbers.

affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).[3] The mere existence of an alleged disputed fact is not enough. *Id.* Rather, the opposing party must prove that there is a genuine issue of a material fact. *Id.*

An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. A fact is "material" if under the governing substantive law, a dispute about the fact might affect the outcome of the lawsuit. *Id.* Factual disputes that are irrelevant or unnecessary will not preclude summary judgment. *Id.*

On a summary-judgment motion, the moving party must first show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. To meet its burden, the nonmoving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, the nonmoving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the nonmoving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

## III.  DISCUSSION

Defendants argue Plaintiff already litigated his current claims, on several occasions, to a final disposition on the merits in the Superior Court of New Jersey, and this federal lawsuit is

---

[3]  Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

6

barred under New Jersey's res judicata and entire controversy doctrines. (Def. Mov. Br. at 8-23). The Court will discuss the two doctrines, and then separately analyze Plaintiff's claims stemming from the 2011 and 2014 Summonses and the Remarkable Mossi's alleged unlawful eviction.

### A. Res Judicata

"New Jersey *res judicata* or claim preclusion law,[4] like federal law, has three essential elements: (1) a final judgment on the merits; (2) the prior suit involved the same parties or their privies; and (3) the subsequent suit is based on the same transaction or occurrence." *Smith v. Hillside Vill.*, No. 17-0883, 2018 WL 588923, at *6 (D.N.J. Jan. 26, 2018) (citing *Watkins v. Resorts Int'l Hotel & Casino, Inc.*, 591 A.2d 592, 599 (N.J. 1991) (state law); and *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984) (federal law)). If those three requirements are met, then the doctrine bars "the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen*, 449 U.S. at 94; *Brown v. Felsen*, 442 U.S. 127, 131 (1979) ("*Res judicata* prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding."); *Watkins*, 591 A.2d at 599 ("Claim preclusion applies not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined.")

### B. Entire Controversy Doctrine

A "blood relative[]" to res judicata, the entire controversy doctrine is New Jersey's "specific, and idiosyncratic, application of traditional res judicata principles." *Rycoline Prods.,*

---

[4] Whether a state court judgment should have a preclusive effect in a subsequent federal action depends on the law of the state that adjudicated the original action. *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999); *see also Allen v. McCurry*, 449 U.S. 90, 96 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."). Here, that State is New Jersey.

7

*Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). "The entire controversy rule precludes, not just claims actually decided by a prior judgment, but all claims and parties that a party could have joined in a prior case based on the same transaction or occurrence." *Smith*, 279 F. Supp. 3d at 545. "There is no requirement that the claim as to which preclusion is sought have been actually asserted in the prior action." *Id.* at 546. Rather, the necessary relation between the prior action and the present one is a factual, transactional one:

> In determining whether a subsequent claim should be barred under this doctrine, the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions. It is the core set of facts that provides the link between distinct claims against the same parties and triggers the requirement that they be determined in one proceeding. There is no requirement that there be a commonality of legal issues.

*Wadeer v. N.J. Mfrs. Ins. Co.*, 110 A.3d 19, 27 (N.J. 2015) (cleaned up). So, the entire controversy doctrine applies in federal court "when there was a previous state-court action involving the same transaction." *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 163 (3d Cir. 1991). In other words, "[i]t extinguishes any subsequent federal-court claim that could and should have been joined in the prior state action." *Smith*, 279 F. Supp. 3d at 546.

"The objectives behind the doctrine are threefold: (1) to encourage the comprehensive and conclusive determination of a legal controversy; (2) to achieve party fairness and (3) to promote judicial economy and efficiency by avoiding fragmented, multiple and duplicative litigation." *DiTrolio v. Antiles*, 662 A.2d 494, 502 (N.J. 1995). "As an equitable doctrine, its application is flexible, with a case-by-case appreciation for fairness to the parties." *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 137 (3d Cir. 1999).

### C. Plaintiff's Claims Premised on the 2011 and 2014 Summonses

Plaintiff alleges that the Police Officer Defendants improperly issued the 2011 and 2014 Summonses against him because of his race and nationality. (*See generally* Compl.). Defendants

8

argue that Plaintiff already litigated his current claims based on these allegations, on several occasions, to a final disposition on the merits in the Superior Court of New Jersey and the instant federal lawsuit is therefore barred as a matter of law. (Def. Mov. Br. at 8-23). The Court agrees.

***The Prior Suit Comprised a Final Judgment on the Merits.*** The Court turns to whether the prior state action comprised final judgments on the merits. *Smith*, 2018 WL 588923, at *6. Relevant here, the Court finds that the New Jersey Superior Court's judgment in *Carrington II* was final and on the merits, as the action was dismissed with prejudice. (D.E. No. 98-12 at 2-3); *ITT Corp. v. Intelnet Int'l Corp.*, 366 F.3d 205, 214 n.17 (3d Cir. 2004) ("[A] dismissal with prejudice clearly constitutes an adjudication on the merits . . . .") (citation omitted); *Proano v. United Parcel Serv., Inc.*, No. 14-5853, 2015 WL 3938647, at *3 (D.N.J. June 25, 2015) (holding that a dismissal with prejudice "was valid, final, and on the merits").

***The Subsequent Suit is Based on the Same Transaction or Occurrence.*** The Court next turns to whether the instant suit is based on the same transaction or occurrence as Plaintiff's *Carrington II* action. *Smith*, 2018 WL 588923, at *6. Whether two causes of action are identical depends, in general, on a consideration of:

> (1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same.

*Athlone Indus., Inc.*, 746 F.2d at 984. Additionally, as explained above, "[c]laim preclusion . . . prohibits reexamination not only of matters actually decided in a prior case, but also those that parties might have, but did not, assert in that action." *Edmundson v. Boro. of Kennett Square*, 4 F.3d 186, 189 (3d Cir. 1993); *see supra* Section III.A. In other words, a new legal theory "does

9

not make the second case different for purposes of claim preclusion." *Jones v. Lapina*, 450 F. App'x 105, 108-09 (3d Cir. 2011).

The Court concludes that the claims in Plaintiff's current Complaint, as they pertain to the 2011 and 2014 Summonses, are identical to *Carrington II* for the purposes of res judicata. The acts complained of and the theories of recovery in both *Carrington II* and the matter at hand are the same. In *Carrington II*, Plaintiff alleged (like in this case) arbitrary and capricious action, malicious prosecution, and discrimination in violation of the NJLAD against Jersey City, the City Council, and several city officials in connection with the issuance of the 2011 and 2014 Summonses. (*See* D.E. 98-10 at 6-20; Compl. ¶¶ 52, 55, 57 at 10-11; *id.* ¶¶ 56-57 at 13). In that case, Plaintiff alleged (like here) that the summonses would not have been issued but for his race. (D.E. 98-10 at 16-17). And in both cases, Plaintiff seeks injunctive relief and penalties for Defendants' "historical" actions. (*See* D.E. 98-10 at 19; Compl. at 16). Moreover, the same evidence necessary to maintain Plaintiff's allegations stemming from the 2011 and 2014 Summonses in this action would have been sufficient to support his claims in *Carrington II*. Put differently, to prove his claims here, Plaintiff would have to present the same evidence—including testimony and documents—that would have been necessary in *Carrington II*.

Indeed, it is undisputed that the issues before this Court are the same as those previously adjudicated in state court in *Carrington II*. By his own admission, Plaintiff's Complaint states that "[P]laintiff now brings this action before this court after unsuccessfully exhausting all local municipal remedy [sic] and the defendant [sic] continue to harassing [sic] plaintiff while legal actions are file [sic] against them in the State Superior Court." (Compl. ¶ 15). Moreover, in response to Defendants' interrogatories requesting that Plaintiff set forth the facts supporting his claims, Plaintiff stated on nine separate occasions that facts supporting his instant allegations are

provided in, among other cases, *Carrington II* (i.e., docket number HUD-L-3611-15). (*See* D.E. No. 98-18 at 3-16 (responses to interrogatories 1, 2, 3, 4, 6, 7, 8, 9 and 23)).

The only new cause of action in the present Complaint relating to the 2011 and 2014 Summonses absent from *Carrington II* is Plaintiff's § 1983 claim. (*See* Compl. at 9-11). But Plaintiff's § 1983 claim relating to the 2011 and 2014 Summonses is based on allegations of arbitrary and capricious action, malicious prosecution, and NJLAD violations that are identical to the claims adjudicated in *Carrington II*. (*See* D.E. No. 98-10 at 6-20; Compl.). "Simply presenting new allegations is not sufficient to overcome claim preclusion if the thrust of the two complaints remain[s] practically identical." *Zahl v. Warhaftig*, 655 F. App'x 66, 73 (3d Cir. 2016). And Plaintiff does not contend that there were any barriers which prevented him from bringing this claim in *Carrington II*. Despite being an issue of federal law, Plaintiff's § 1983 claim could have and should have been raised in his state action. *See Lui v. Comm'n, Adult Entm't, De*, 369 F.3d 319, 326 (3d Cir. 2004) ("State courts are every bit as competent to deal with . . . claims . . . as are federal courts, and this, of course, includes the ability to address claims under both the State constitution and the Federal constitution."). Plaintiff's attempt to relitigate claims that have resulted in a final judgment fails under New Jersey's claim preclusion jurisprudence. *Cf. Edmundson*, 4 F.3d at 189 ("Claim preclusion . . . prohibits reexamination not only of matters actually decided in prior cases, but also those that the parties might have, but did not, assert in that action.").

***The Prior Suit Involved the Same Parties or Their Privies.*** Next, the Court turns to whether the prior suit involved the same parties or their privies. *Smith*, 2018 WL 588923, at *6. Defendants argue that "[b]oth state court matters were adjudicated and dismissed on the merits and the parties in these state matters are undoubtedly identical to or are in privity with the

Defendants in the Federal Complaint." (Def. Mov. Br. at 27). As to *Carrington II*, the Court agrees.

The Third Circuit describes privity as "merely a word used to say that the relationship between one who is a party on the record and another is close enough to include that other within the *res judicata*." *Zahl*, 655 F. App'x at 73 (citations omitted). "The term 'privity' is used merely as 'a way to express the conclusion that nonparty preclusion is appropriate on any ground.'" *Salerno v. Corzine*, 449 F. App'x 118, 122-23 (3d Cir. 2011) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 894 n.8 (2008)). "New Jersey courts are more willing to find that parties are in privity if the plaintiff had a full and fair opportunity to litigate its claims in the first action." *Hamburg Music Corp. v. Winter*, No. 04-2738, 2005 WL 2170010, at *3 (3d Cir. Sept. 8, 2005) (citing *Zirger v. Gen. Accident Ins. Co.*, 676 A.2d 1065, 1071 (N.J. 1996)); *Bruszewski v. United States*, 181 F.2d 419, 422 (3d Cir. 1950) (explaining that the res judicata doctrine has developed away "from formalism which impedes the achievement of fair and desirable results" in cases where a plaintiff has asserted "essentially the same claim against different defendants" on subsequent occasions). The Third Circuit further explained that, in these circumstances, "courts have . . . enlarged the area of *res judicata* beyond any definable categories of privity between the defendants." *Zahl v. Warhaftig*, No. 13-1345, 2015 WL 1197095, at *5 (D.N.J. Mar. 16, 2015), *aff'd*, 655 F. App'x 66 (3d Cir. 2016).

Plaintiff (along with the Remarkable Mossi) was a party to the *Carrington II* action. (D.E. No. 98-10 at 4, 7). Defendants Jersey City, City Council, Sergeant Crecco, and Officer Mullahney also meet this element because they were named defendants in *Carrington II*. (*Id.* at 6-7). As for Plaintiff's claims arising from the 2011 and 2014 Summonses, the instant Complaint also includes claims against Police Officer Defendants Gerand, Collier, Peguero, Comandatore, and Hennessy;

12

Director Shea; and the Internal Affairs Unit of the Jersey City Police Department. (Compl. at 1-2). But these additional parties were known to Plaintiff as all but two were identified in the *Carrington II* complaint.[5] And Plaintiff's opposition notes that Plaintiff also knew of the involvement of the two officers not identified in the *Carrington II* complaint: Officers Collier and Garand.[6] Yet Plaintiff never alleged any claims against these newly added defendants even though he knew of their involvement. "Adding in new defendants and claims does not prevent [this Court] from finding privity, as the connections between the parties and claims implicated in the [*Carrington II*] complaint, and those in the instant complaint reveal that . . . [Plaintiff] had a full and fair opportunity to litigate his claims in the first action." *Zahl*, 655 F. App'x at 73. Again, "[t]he entire controversy rule precludes, not just claims actually decided by a prior judgment, but all claims and parties that a party could have joined in a prior case based on the same transaction or occurrence." *Smith*, 279 F. Supp. at 545. Given these circumstances, the Court finds that all Defendants who face allegations based on the 2011 and 2014 Summonses are the same as or the privies of the *Carrington II* defendants. Because Plaintiff "had a full and fair opportunity" to join these parties and has provided no reason for not doing so in his state court matter, he is precluded from doing so now. *See id*.

Asking this Court to determine, based on the same evidence as was before the New Jersey Superior Court, whether there was wrongdoing in the issuance of the 2011 and 2014 Summonses, would require a federal court to question the final judgment of a state court. The Full Faith and Credit Clause of the Federal Constitution, codified in statute, requires that federal courts give "full

---

[5] (*See* D.E. No. 98-10 at 15, 16, 20 (identifying Officer Peguero); *id.* at 16 (identifying Officer Comandatore); *id.* (identifying Officer Hennessy); *id.* at 10 (identifying Director Shea); *id.* at 10, 11 (identifying Internal Affairs Unit)).

[6] (*See* Pl. Opp. Br. at 23 ("On March 4 2011 notorious Officer Steven Collier and his partner Officer N Garand and four contingents of police units converge on plaintiff fully license and insured community facility and unlawfully disrupted plaintiff fundraising event and ordered the business to close.") (reproduced verbatim)).

faith and credit" to the judgments of state courts. U.S. Const. art. IV, § 1; 28 U.S.C. § 1738. Accordingly, Defendants' motion for summary judgment is granted (and Plaintiff's cross-motion is denied) on all of Plaintiff's claims arising from the issuance of the 2011 and 2014 Summonses, as those claims are barred by res judicata and the entire controversy doctrine.

### D. Plaintiff's Claims Premised on the Remarkable Mossi's Eviction

Plaintiff also asserts a number of claims stemming from the Remarkable Mossi's eviction from the Bethune Center. (*See generally* Compl.). In essence, Plaintiff complains of illegal eviction based on race discrimination. (Pl. Opp. Br. at 8). Specifically, Plaintiff alleges that "[t]he defendants unlawfully discriminated against the plaintiff on the basis of race by unfairly closing plaintiff['s] business, posting publishing and distributing deceitful and defamatory notices along with illegal eviction notices and instructing plaintiff['s] customers to take their business somewhere else." (Compl. ¶ 57 at 13). Plaintiff appears to allege these claims against Defendants Pettit, Hallanan, and "the police of Jersey City."[7] (Pl. Opp. Br. at 20-25; Pl. Mov. Br. at 4-27; Compl. ¶ 52 at 10; *id.* ¶ 61 at 11).[8]

---

[7] In his summary-judgment briefing, Plaintiff also appears to be asserting claims against "Business Administrator Robert Kakoleski" and "former Ward F Council-Woman Diane Coleman" for acts relating to the Remarkable Mossi's eviction from the Bethune Center. (*See, e.g.*, Pl. Opp. Br. at 29 ("Jersey City Business Administrator Robert Kakoleski and former Ward F Council-Woman Diane Coleman must be joined in the above action."); Pl. Mov. Br. at 5-7, 13, 16, 18, 23 (listing allegations against Kakoleski and Coleman)).

"Plaintiffs," however, "cannot amend their pleadings in a summary judgment motion." *Olmo v. Atl. City Parasail, LLC*, No. 13-4923, 2016 WL 1704365, at *6 (D.N.J. Apr. 28, 2016); *see also Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (noting that "[a]t the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with FED. R. CIV. P. 15(a)" and that "[a] plaintiff may not amend her complaint through argument in a brief opposing summary judgment"); *Taveras v. Resorts Int'l Hotel, Inc.*, No. 07-4555, 2008 WL 4372791, at *6, n.7 (D.N.J. Sept. 19, 2008) ("[Plaintiff] may not amend a complaint through her briefs to the Court.").

As such, the Court will not consider these claims. *Cf. Anderson v. DSM N.V.*, 589 F. Supp. 2d 528, 534 n.5 (D.N.J. 2008) (declining to consider claim not pleaded in the complaint).

[8] (*See, e.g.*, Compl. ¶ 52 at 10 ("The plaintiff has a right, privilege, and immunity secured by the Fourteenth Amendment to the United States Constitution and the laws of the United States to equal protection under law and to be free from racial discrimination by defendant Alvin Pettit, Attorney John [J.] Hallanan or the police of Jersey City. By their conduct in preventing and disrupting the plaintiff's training business program and closing his business, the defendants denied the plaintiff equal protection of the law and discriminated against the plaintiff on the basis of race.");

In support of their motion, Defendants contend that "Plaintiff's claims for unlawful eviction from the Bethune Center and any related claims are barred by *res judicata*." (Def. Mov. Br. at 19-20). But Defendants fail to address two of the three elements required to establish the affirmative defense of res judicata. *See Smith*, 2018 WL 588923, at *6 (listing the three elements of res judicata). Defendants state only that "all claims in the Federal Complaint regarding the alleged unlawful eviction arise out of the same transaction (i.e. plaintiff's occupancy of the Bethune Center) and involve the same parties that were involved in the state matter bearing docket no. HUD-LT-11861-15," (i.e., *Carrington III*). (Def. Mov. Br. at 19-20). Even if the Court were to determine from the parties' exhibits that the prior suit involved the same parties or their privies, Defendants nowhere address whether the consent order—signed only by the parties' counsel and not by the New Jersey Superior Court—comprises a final judgment on the merits.

Moreover, Defendants advance the unsupported argument that "[a]ny claims for unlawful conduct by the Defendants regarding the removal of the Remarkable Mossi from the Bethune Center are (a) affirmative defenses that should have been raised to defend against the eviction and/or, (b) amount to counterclaims that should have been brought in the Superior Court . . . and/or, (c) plaintiff should have appealed the entry of the consent order." (*Id.* at 19).[9] Yet the consent order states: "The Defendant [i.e., Remarkable Mossi] also does not waive any legal rights by signing this Agreement. The payment of $1,350.00 is not a concession that the Tenant's rent was/is $1,350.00 and not a waiver of that defense." (D.E. No. 98-14 at 2).

---

*id.* ¶ 61 at 11 ("Director Alvin Pettit and John Hallanan did not only post the defamatory notice, they told all of plaintiff['s] customers to take their business somewhere else.")).

[9]  (*See also* Def. Mov. Br. at 10 ("The claims for unlawful eviction constitute affirmative defenses and/or counterclaims that should have previously been brought and/or plaintiff should have appealed the entry of the consent order.") (without citation to authority)).

15

Because Defendants have not addressed all the elements required to establish the affirmative defense of res judicata on Plaintiff's claims stemming from the Remarkable Mossi's alleged unlawful eviction, the Court will order the parties to submit supplemental briefing addressing this issue. In their supplemental submissions, the parties may—with citations to the relevant authorities—raise any and all arguments relevant to Plaintiff's claims premised on the alleged unlawful eviction. Accordingly, the Court will reserve its determination of Defendants' motion and Plaintiff's cross-motion for summary judgment on Plaintiff's claims arising from the Remarkable Mossi's eviction from the Bethune Center.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion on Plaintiff's claims arising from the 2011 and 2014 Summonses, DENIES Plaintiff's cross-motion for summary judgment on these claims, and RESERVES its determination on the parties' motions relating to Plaintiff's claim of unlawful eviction from the Bethune Center pending submission of the parties' supplemental briefing. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**