


**CITY OF JERSEY CITY**

DEPARTMENT OF LAW

CITY HALL ● 280 GROVE STREET ● JERSEY CITY, NJ 07302
PHONE (201) 547-5229 ● FAX (201) 547-5230

**STEVEN M. FULOP**
*MAYOR OF JERSEY CITY*

**PETER J. BAKER**
*CORPORATION COUNSEL*

June 29, 2018

**Via ECF**
The Honorable Esther J. Salas, U.S.D.J.
United States District Court
Martin Luther King Jr. Courthouse
50 Walnut Street
Newark, NJ 07102

    **Re:   Carrington v. City of Jersey City, et al.**
          **Civil Action No. 2:15-cv-07030 (ES)(SCM)**

Dear Judge Salas:

This office represents the Defendants in the above matter. Pursuant to Your Honor's Order dated June 4, 2018, please accept this supplemental letter brief in further support of the Defendants' motion for summary judgment ("Motion") with regard to plaintiff Philip Carrington's ("plaintiff") claims stemming from the Remarkable Mossi Youth Council's ("Remarkable Mossi") alleged unlawful eviction from the Bethune Center due to plaintiff's race and nationality in violation of 42 U.S.C. 1983 and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq. ("NJLAD").[1] As discussed herein and in Defendants' prior briefs and papers

---

[1] Counsel for the Defendants conducted additional research on the issue of res judicata and concluded that this doctrine does not apply to plaintiff's claim for unlawful eviction. However, the arguments in all of Defendants' moving papers show that this claim should be dismissed with prejudice because plaintiff has failed to establish that he was evicted due to his race and nationality.

1

filed in support of the Motion (Dkt Nos. 98-1, 98-2, 108 and 110), the undisputed facts confirm that plaintiff cannot establish a claim for unlawful eviction pursuant to Section 1983, NJLAD or any other legal theory and his claims should be dismissed with prejudice.

In order for the non-moving party to defeat a motion for summary judgment, they "must point to concrete evidence in the record that supports each and every essential element of his case." <u>Orsatti v. N.J. State Police</u>, 71 F.3d 480, 484 (3rd Cir. 1995). "Speculation and conjecture may not defeat summary judgment." <u>Acumed LLC v. Advanced Surgical Servs</u>., Inc., 561 F.3d 199, 228 (3d Cir. 2009). "In fact, a court does not have to adopt the version of facts asserted by the nonmoving party if those facts are utterly discredited by the record [so] that no reasonable jury" could believe them." <u>Scott v. Harris</u>, 550 U.S. 372, 380, (2007).

Plaintiff has failed to proffer any evidence supported by the record which demonstrates racial misconduct. His allegations of unlawful eviction due to his race are not supported by the record or any testimony under oath, affidavits, or certifications. Rather, plaintiff simply summarized his opinions and feelings that are based upon speculation and conjecture. Indeed, the undisputed record confirms that there were legitimate reasons to evict plaintiff, primarily, his failure to pay rent. As highlighted herein, there are no triable issues to present to a jury because

2

the undisputed record lacks any evidence to permit a trier of fact to conclude that plaintiff was evicted because of his race or deprived of any constitutional rights.

**There is No Dispute That Plaintiff Cannot Satisfy the Requisite Elements to Establish a Claim for Unlawful Eviction on the Basis of His Race Under 42 U.S.C. 1983 and This Claim Should Be Dismissed With Prejudice**

In order to establish a claim under 42 U.S.C. 1983, a plaintiff must show that the alleged unlawful conduct was committed by a person acting under color of state law and that such acts deprived the plaintiff of rights or privileges secured by the Constitution or laws of the United States. Lorenzo v. Jones, 2011 U.S. Dist. LEXIS 104705 *7 (D.N.J. September 9, 2011); see Berg v. County of Allegheny, 219 F.3d 261, 268 (3rd Cir. 2000). Indeed, Section 1983 "is not a source of substantive rights and does not provide redress for common law torts, [but, rather], plaintiffs must allege a violation of a federal right" such as false arrest or unlawful imprisonment in violation of the Fourth Amendment. Berg at 268. Plaintiff must also show that the City of Jersey City ("City") employed a policy that deprived him of his constitutional rights which caused him to suffer an injury. Szemple v. Corr. Med. Servs., 493 Fed. Appx. 238, 241 (3rd Cir. 2012) citing Monell v. Dept. of Soc. Servs. of N.Y., 436 U.S. 658, 694 (1978).

Here, other than plaintiff's empty, conclusory allegations that the Defendants generally violated his rights, he has failed

3

to identify specific conduct supported by the record which confirms that the Defendants violated rights to which he is entitled under the law. The below listed allegations proffered by plaintiff are not supported by the record and fail to show that he was deprived of any rights or was evicted from the Bethune Center due to his race in violation of Section 1983 or the NJLAD:

1. Plaintiff was evicted because he failed to pay rent and did not possess a valid license or lease. He argues that after vacating the Bethune Center, Alvin Pettit (the head of the Bethune Center who is African American) and Florence Holmes (a former Bethune Center employee) occupied the space previously used by plaintiff and they did not pay rent or procure a lease or license. As such, plaintiff contends that he was evicted due to his race because Pettit and Holmes did not pay rent or possess a license or lease. *See Certification of Philip Adelman dated November 21, 2018 (Dkt No. 98-5)("Adelman Cert."), Exh. K, Plaintiff's Deposition Transcript ("Pl. Tr.") at p. 151-156; Exh. L, Deposition Transcript of Alvin Pettit ("Pettit Tr.") at p. 4-6.*

2. Plaintiff erroneously argues that he was evicted because of his race because he possessed a valid lease to occupy the Bethune Center and fully paid his rent. *See Plaintiff's Brief dated November 21, 2017 (Dkt No. 100-2) ("Pl. November*

4

   *Br."*) *at p. 15.* This allegation is utterly discredited by and not supported by the record.

3. Plaintiff contends that no white person had ever been subjected to the treatment he incurred regarding his eviction. Thus, he concluded that Defendants' failure to produce documents showing that a white person was evicted for the same reasons he was evicted and the failure to produce documents showing he was not evicted due to his race shows he was evicted because he is an African American from Barbados (plaintiff is essentially demanding the Defendants to prove a "negative" which is not appropriate or required). *Adelman Cert., Exh. K, Pl. Tr. at p. 158, l. 24-25, p. 159, l. 1-9, p. 160-161, p. 167, l. 12-25, p. 168, l. 1-9.*

*4.* Plaintiff concluded that since the summonses dated March 4, 2011 and September 10, 2014 were issued to him because of his race, he must was evicted from the Bethune Center because of his race. *Adelman Cert., Exh. K, Pl. Tr. at p. 158-161.*

5. Plaintiff testified that he was involved in certain events and court decisions that occurred in 1998 and 2000 which showed a pattern of racial discrimination thereby establishing he was evicted due to his race. *Adelman Cert., Exh. K, Pl. Tr. at p. 164, l. 1-25, p. 165, l. 1-19.*

6. Plaintiff argued that he was required to have an agreement to occupy the Bethune Center while other renters were not

5

required to have a lease thereby demonstrating that he was evicted because of his race. *Adelman Cert., Exh. K, Pl. Tr. at p. 167, l. 1-8.*

7. Finally, plaintiff's brief in opposition to Defendants' Motion asserts the following to show unlawful eviction: (a) police officers unlawfully assisted with plaintiff's eviction, (b) signs regarding his eviction were unlawfully posted, (c) defendants Hallanan and Pettit improperly prosecuted the landlord-tenant matter (HUD-LT-11861) (the "Landlord-Tenant Matter") to evict plaintiff, (d) Hallanan and Pettit failed to meet with plaintiff after the Landlord-Tenant Matter was commenced, (e) plaintiff did not receive written notice of his failure to pay rent, (f) Hallanan and Pettit lied to the court and misled plaintiff to enter into a consent order to vacate the Bethune Center. *See Plaintiff's Opposition Brief dated December 29, 2017 (Dkt No. 107)("Pl. Opp.") at p. 4, 5, 15 to 23.*

When considering the foregoing statements in the light most favorable to the plaintiff, reasonable minds may only conclude that these events do not show that the Defendants deprived plaintiff of any rights under the law or evicted him because of his race. At best, plaintiff implies that he has the right to be free from racial discrimination. Nonetheless, the foregoing allegations simply constitute unsupported conclusory statements

6

that are based on speculation. Other than his personal feelings, there is no evidence showing that the above events occurred because of his race. Rather, plaintiff simply identified a series of events and argued that such events occurred because of his race and nationality. Indeed, plaintiff testified that no racial slurs were made towards him in connection with the eviction. He also admitted that he did not possess any tangible records demonstrating any acts of racism committed by the Defendants. *Adelman Cert., Exh. K, Pl. Tr. at p. 168, l. 20-25, p. 169, l. 1, p. 175, l. 1-15.*

Additionally, there is no federal or state law which gives plaintiff the right to occupy the Bethune Center in perpetuity especially since the facts of record confirm that he was evicted because he failed to pay rent and did not have a valid license or lease agreement permitting him to remain in the Bethune Center.

By Resolution dated July 13, 2005 (no. 05-556)(the "Resolution"), the City Council authorized the Remarkable Mossi to rent a room at the Bethune Center only from July 1, 2005 to August 31, 2005 at a rate of $1,343.76 per month. *Adelman Cert., Exh. A.* There is no evidence in the record of any valid resolutions, leases, licenses or agreements between the City and the plaintiff or the Remarkable Mossi which authorized them to occupy the Bethune Center after August 31, 2005. Importantly, the City Clerk's Office does not possess any documents showing that the Remarkable Mossi or plaintiff were authorized to occupy the Bethune Center after

August 31, 2005. *See December 12, 2016 Certification of the City's Clerk Robert Byrne ("Byrne Cert.") (Dkt No. 108-2)*.

In fact, plaintiff expressly admitted that he did not have authorization to occupy the Bethune Center after August 31, 2005. Plaintiff said that he "occupied room 105 [in the Bethune Center] from 2003 to January 4, 2016 <u>without City Council approval</u>," and that "the license agreement for room 105 never became a resolution." *See plaintiff's statement of undisputed facts ("Pl. SOF")(Dkt No. 100-1) at ¶¶18, 23*.

Moreover, although plaintiff proffered a lease and license agreement to show that he had permission to occupy the Bethune Center after August 31, 2005, there is no evidence in the record which shows that the City signed or agreed to the terms of those agreements. *See Plaintiff's Exhibits to his Motion for Summary Judgment ("Pl. Exh.")(Dkt no. 100-3)(Exh. A2 to A11)*. In fact, plaintiff testified that he did not have any evidence showing that the foregoing lease and license were signed by the City or that the City accepted the terms to those agreements. *Adelman Cert., Exh. K, Pl. Tr. at p.71, l. 1-6, p. 73, L. 6-11, p. 87, l. 1-24, p. 88, l. 1-10, p. 91, l. 2-16, p. 96, l. 1-14; see Byrne Cert.*

To show that he paid all of his rent, Plaintiff only submitted copies of 53 checks. *(Pl. Exh., A14 to A27)*. Because the monthly rent under the Resolution was $1,343.76 and 34 of the 53 checks were made payable in this amount, it is reasonable to conclude

8

that plaintiff's monthly rent was $1,343.76. There is no dispute that the Plaintiff occupied the Bethune Center from September 1, 2005 to January 4, 2016 (*Pl. SOF at ¶18*) which amounts to 124 months of rent owed to the City. Assuming a monthly payment of $1,343.76, plaintiff was required to pay a total sum of $166,626.24 to the City to occupy the Bethune Center. The total sum of the checks produced by plaintiff equals $62,055.28. *Pl. Exh., A14 to A27.* Thus, reasonable minds would conclude that plaintiff failed to fully pay rent owed to the City and is in arrears of approximately $104,570.96.

Plaintiff did not produce proof that the City actually received and deposited each of the 53 checks. But, even assuming that plaintiff's payment of $62,055.28 satisfied all rent obligations, this would mean that the amount of his rent over the course of 124 months amounted to approximately $500 per month. There is no evidence showing that the City agreed to accept $500 per month to permit plaintiff to occupy the Bethune Center.

Of equal importance, plaintiff, with the advice of counsel, voluntarily entered into a consent order to vacate the Bethune Center rather than challenging the basis of the Landlord-Tenant Matter. Adelman Cert., Exh. I. Although plaintiff claims that he was misled to enter the consent order, he was represented by counsel. Indeed, it is reasonable to conclude that if plaintiff

9

had a valid lease and fully paid all rent, he would have disclosed this information to defend against the Landlord-Tenant Matter.

Additionally, although the matter of Kassem v. Walgreens Corporate, 2014 U.S. Dist. LEXIS 93726 (D.N.J. July 10, 2014) involves claims for employment discrimination wherein the plaintiff alleged he was fired because of his race, the general principles regarding a non-moving party's burden to oppose a motion for summary judgment in matters involving racial discrimination are applicable and lend guidance to the instant matter. In Kassem, the Court determined that plaintiff failed to produce actual evidence of racial discrimination and that his opposition to the motion simply consisted of speculation and conjecture based his deposition testimony wherein he testified that he believed that the defendant discriminated against him. Id. at **15-16. Moreover, the evidence in the record demonstrated that plaintiff had a legitimate, non-discriminatory reason for terminating the plaintiff, namely, because of his "history of tardiness, incidents with customers, and consistently poor job performance." Id. at *12. The Court also held that "a company has the right to make business judgments on employee status, particularly when the decision involves subjective factors deemed essential to certain positions … [and] a court does not sit as arbiter of particular employment decisions, [it] determines whether such decisions were animated by an illegal discriminatory purpose." Id. at **8-9.

Likewise, in the instant matter, there is no evidence in the record which demonstrates that the conduct of the Defendants was predicated on the plaintiff's race and nationality. Like the plaintiff in Kassem, Mr. Carrington has simply offered his own personal beliefs and conclusions that the Defendants engaged in discriminatory conduct. *Adelman Cert., Exh. K at p. 151-156, 158-161; Pl. November Brief at p. 15.* Plaintiff merely contends that he was evicted because of his race without providing evidence of discriminatory conduct supported by the record. Id., Exh. K. at p. 168-169, p. 219, l. 2-21, p. 222-225. Moreover, similar to the defendant in Kassem, the Defendants have produced undisputed evidence in the record that there was a legitimate, non-discriminatory reason to evict the plaintiff, that being, plaintiff's failure to pay rent coupled with the fact that he did not possess a license or lease authorizing him to occupy the Bethune Center. Indeed, the City is akin to a company and the Defendants also possess the right to make business decisions to evict tenants who fail to pay rent.

**There is No Dispute That Plaintiff Cannot Satisfy the Requisite Elements to Establish a Claim for Unlawful Eviction on the Basis of His Race Under the NJLAD and This Claim Should Be Dismissed With Prejudice.**

The NJLAD prohibits an operator or owner of any place of public accommodation "from denying any of its accommodations, advantages, facilities or privileges on the basis of race, creed, color, national origin, ancestry, marital status, nationality or

11

sex." Kiwanis Int'l v. Ridgewood Kiwanis Club, 806 F.2d 468, 471 (3rd Cir. 1986); N.J.S.A. 10:5-4, 10:5-12(f). Here, plaintiff cannot establish a cause of action under the NJLAD for the same reasons he cannot prove his Section 1983 claims.

Plaintiff has failed to proffer evidence supported by the record which shows that he was denied the privileges and advantages of occupying space at the Bethune Center because of his race. As discussed at length above, the alleged conduct of the Defendants does not demonstrate that plaintiff was evicted from the Bethune Center because of his race.

Indeed, the undisputed evidence in the record and highlighted herein confirms that plaintiff was evicted because he failed to pay rent and had no authority to occupy the Bethune Center beyond August 31, 2005. Moreover, there is no evidence which showed that the Defendants refused to provide plaintiff with a lease or license to occupy the Bethune Center because of his race.

**Defendants' Motion for Summary Judgment Should be Granted in its Entirety Because the Facts Asserted in the Motion are Undisputed and Properly Supported by the Record.**

Local Civil Rule 56.1 states in pertinent part,

> The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact

12

> <u>not disputed shall be deemed undisputed for purposes of the summary judgment motion</u>.

Moreover, Fed. R. Civ. P. 56(c)(1) states in relevant part,

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:(A) citing to particular parts … in the record … (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Further, Fed. R. Civ. P. 56(e) states,

> "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact … the court may … (2) consider the fact undisputed … ;(3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."

Here, plaintiff <u>failed</u> to provide "a responsive statement of material facts, addressing each paragraph of the [Defendants'] statement [of facts]," as required under Local Rule 56.1. Moreover, plaintiff failed to properly address the facts asserted in Defendants' Motion because he did not cite to portions of the record that show a genuine dispute of fact. Fed. R. Civ. P. 56(c)(1). Thus, the Defendants' Statement of Relevant Undisputed Material Facts filed in support of the Motion should be deemed undisputed pursuant to Local Rule 56.1 and Fed. R. Civ. P 56(e)(2).

## Conclusion

Based on the foregoing together with the contents of Defendants' prior briefs (Dkt Nos. 98-1, 98-2, 108 and 110)

submitted in support of the Motion, the undisputed material facts in the record confirm that the Defendants did not engage in any acts of misconduct (racial or otherwise) which directly deprived plaintiff of any rights under the law or caused his eviction because of his race and nationality. Rather, the record confirms that there were legitimate reasons to evict plaintiff because he failed to fully pay rent and did not possess a valid lease or license agreement authorizing him to occupy the Bethune Center. Thus, the Defendants appropriately instituted the Landlord-Tenant Matter. As such, reasonable minds could only conclude that the Defendants did not violate Section 1983 or the NJLAD and that plaintiff was not unlawfully evicted.

Accordingly, it is respectfully requested that the Defendants' Motion for Summary Judgment be granted in its entirety and that plaintiff's entire complaint and all claims therein be dismissed with prejudice. We appreciate Your Honor's time and attention to this matter.

Respectfully submitted,

**PETER J. BAKER**
**CORPORATION COUNSEL**

*/s/ Philip S. Adelman*
Philip S. Adelman, Esq.
Assistant Corporation Counsel

cc: Philip Carrington (Via ECF, electronic mail & certified mail)