**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHAMBERS OF**<br>**ESTHER SALAS**<br>**UNITED STATES DISTRICT JUDGE** | **MARTIN LUTHER KING**<br>**COURTHOUSE**<br>**50 WALNUT ST.**<br>**ROOM 5076**<br>**NEWARK, NJ 07101**<br>**973-297-4887** |

September 27, 2021

**LETTER OPINION AND ORDER**

Re:   *Philip Carrington v. City of Jersey City, et al.*,
      **Civil Action No. 15-7030 (ES)**

Dear Parties:

Presently before the Court is *pro se* plaintiff Philip Carrington's ("Plaintiff") motion to vacate the Court's May 2, 2019 Opinion and Order granting Defendants'[1] motion for summary judgment and its December 4, 2019 Order denying Plaintiff's request to reconsider the same. (D.E. No. 135 ("Motion")). The Court construes the Motion as a request for relief from a final judgment or order pursuant to Federal Rule of Civil Procedure ("Rule") 60(b). Having considered the parties' submissions, the Court decides the Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Court DENIES Plaintiff's Motion.

### I.   BACKGROUND

Plaintiff initiated this action in 2015 in connection with summonses he received for serving food without a license, and an eviction from property he rented from Jersey City to run a day-care center. (*See generally* D.E. No. 1 ("Compl.")). On May 2, 2019, the Court issued an Opinion and Order, granting Defendants' motion for summary judgment on Plaintiff's unlawful eviction claims, denying Plaintiff's cross-motion, and closing this action. (D.E. No. 126 ("May 2019 Opinion" or "May 2019 Op.") & D.E. No. 127 (together, the "May 2019 Decision")).[2]

The Court restates relevant, undisputed material facts from its June 2018 Opinion, which are also incorporated in the subsequent May 2019 Opinion. (*See* May 2019 Op. at 1–2 (incorporating the facts and procedural history as set forth in the Court's June 2018 Opinion)):

---

[1]  The defendants include: the City of Jersey City ("Jersey City"); Jersey City Council; Officers N. Gerand, S. Collier, Sean Mullahey, Ramon Peguero, Hennessy, and Comandatore; Sergeant James Crecco; Jersey City Internal Affairs Unit; Police Director James Shea; Director Alvin Pettit; and John Hallana (collectively, "Defendants"). All pincites to Docket Entry Numbers 100-3, 135-2, 135-3, and 135-6 refer to the CM/ECF pagination automatically generated in the upper-righthand corner.

[2]  Previously, on June 4, 2018, the Court granted Defendants' motion for summary judgment as to Plaintiff's claims relating to the summonses. (D.E. No. 114 ("June 2018 Opinion" or "June 2018 Op.") & D.E. No. 115). The Court reserved its determination, however, on Plaintiff's unlawful eviction claims premised on racial discrimination pursuant to 42 U.S.C. § 1983 and the New Jersey Law Against Discrimination ("NJLAD"). (June 2018 Op. at 14). The Court requested supplemental briefing before rendering its May 2019 Decision. (May 2019 Op. at 2).

>Plaintiff [ ] owned and operated the Remarkable Mossi Youth Council (the "Remarkable Mossi"), a day-care center. ([Compl.] ¶¶ 7, 18, 45). Plaintiff operated the Remarkable Mossi out of a complex owned by Jersey City . . ., known as the "Bethune Center." (*Id.* ¶ 7; Def. SMF ¶ 5). Plaintiff rented the Bethune Center in accordance with City Council Resolution 05-556, dated July 13, 2005, which authorized the Remarkable Mossi to rent a room at the Bethune Center from July 1, 2005 to August 31, 2005. (Def. SMF ¶ 5). The lease does not appear to have been extended. (*See* D.E. No. 100-3 at 33 (June 11, 2015 letter from Jersey City Business Administrator to Plaintiff stating that Plaintiff's "prior License expired in September of 2005 and there is no record of it ever having been extended")). In August 2015, Pettit posted several eviction notices at the Remarkable Mossi in the Bethune Center and alerted Plaintiff's customers they would have to find a new day-care center because the Remarkable Mossi was being evicted. (Pl. SMF ¶ 26). Plaintiff continued to operate the Remarkable Mossi out of the Bethune Center until his eviction on January 4, 2016. (*Id.* ¶ 32).

(June 2018 Op. at 2–3 & 5). In September 2015, Jersey City initiated eviction proceedings in New Jersey Superior Court against Remarkable Mossi. (*Id.* at 5). Remarkable Mossi and Jersey City (both represented by council at the time) entered a consent order in November 2015, providing that Remarkable Mossi would voluntarily vacate the Bethune Center by December 31, 2015. (*Id.*).

In granting Defendants' motion for summary judgment, the Court found that Plaintiff failed to establish a claim under § 1983 or the NJLAD. (May 2019 Op.). Specifically, the evidence did not support Plaintiff's contention that Defendants evicted Plaintiff's business because of his race or nationality in violation of Plaintiff's federal or state rights. (*Id.* at 4–12). The Court found that Remarkable Mossi became a holdover tenant beginning on September 1, 2005, through January 4, 2016, and owed approximately $166,626.24 in back rent. (*Id.* at 5–6 (adding checks, submitted by Plaintiff to establish proof of full payment, totaling about $62,055.28 and noting that Remarkable Mossi still owed roughly $104,570.96 in unpaid rent)). Relevant here, the Court did not credit a lease agreement Plaintiff produced dated June 5, 2005, which purported to convey a fifteen-year leasehold to Remarkable Mossi for $100 per month. (*Id.* at 7–8). The lease had not been signed by Jersey City or an authorized individual on its behalf, and the record as a whole did not support the finding that Remarkable Mossi had a new lease agreement with Jersey City. (*Id.* (citing D.E. No. 100-3 at 11–16; D.E. No. 98-16 (Plaintiff's deposition); D.E. No. 108-2)).

Plaintiff also argued that the U.S. Department of Housing and Urban Development ("HUD") covered Remarkable Mossi's rental obligation by way of an annual Community Development Block Grant ("CDBG") totaling $16,000, paid directly to Jersey City. (*Id.* at 6). In support, Plaintiff submitted a letter signed by the Director of HUD's Division of Community Development ("DCD"), dated July 12, 2007. (*Id.*). In discounting Plaintiff's argument, the Court noted that "the letter contains no reference to Remarkable Mossi or that the grant funds can be used to pay Remarkable Moss's rent at the Bethune Center." (*Id.*). While the letter instructed Plaintiff to file certain documents within a specific time frame to obtain the $16,000 grant, the letter stated that a request required approval by the DCD. (*Id.*). Accordingly, the Court further reasoned that Plaintiff "provide[d] no evidence that he ever filed the required documents, that he did so within the specified period, that he requested the funds be used to pay Remarkable Mossi's

2

rent, or that the DCD ever approved or denied such a request." (*Id.* at 7).

On December 4, 2019, the Court denied Plaintiff's motion to reconsider its May 2019 Decision. (D.E. No. 133 ("December 2019 Order")). Almost one year later, on December 1, 2020, Plaintiff filed the instant Motion and accompanying papers challenging the Court's May 2019 Decision and December 2019 Order. (Motion; D.E. No. 135-1 (cover letter); D.E. No. 135-2 (moving brief ("Mov. Br.")); D.E. No. 135-3 (statement of facts ("Pl. Supp."));[3] D.E. No. 135-4 (certification ("Pl. Cert.")); D.E. No. 135-5 (certification of authenticity ("Pl. Supp. Cert.")); D.E. No. 135-6 (exhibit compilation); D.E. No. 135-7 (proposed order)). Defendants opposed the Motion on January 4, 2021 (D.E. No. 140 ("Opp.")), and Plaintiff replied on January 12, 2021. (D.E. No. 141 ("Reply")). The Court is also in receipt of Plaintiff's letter dated August 13, 2021 (D.E. No. 142), and additional exhibits referenced therein. (D.E. Nos. 142-1, 142-2, 142-3 & 142-4). The Motion is ripe for determination.

## II.     LEGAL STANDARD[4]

Rule 60(b) dictates that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" under the following circumstances:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Rule 60 is meant "to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Boughner v.*

---

[3]    Docket Entry Number 135-3 entitled "Statement of Relevant Facts in Support of Plaintiff['s] Motion to Vacate Judgment or Order," contains both factual assertions and legal arguments. To the extent this document includes applicable arguments beyond those stated in *pro se* Plaintiff's moving brief (*see* Mov. Br.), the Court considers Docket Entry Number 135-3 in this Letter Opinion as a supplemental submission. However, the submission largely reflects Plaintiff's prior motion for summary judgment, (*compare* Pl. Supp. at 29 (requesting that the Court grant summary judgment in Plaintiff's favor), *with* D.E. No. 100-2), and it cannot be used as a vehicle to amend the complaint or relitigate previously decided claims. *See Gurvey v. M&T Bank, Inc.*, No. 20-7831, 2021 WL 4199325, at *1, n.3 (D.N.J. Sept. 14, 2021).

[4]    Although Plaintiff cites to New Jersey Court Rules 4:50-1 ("Relief from Judgement or Order: Grounds of Motion") and 4:49 ("New Trials; Amendment of Judgments: Motion for New Trial"), the Court resolves the Motion according to Rule 60(b). Rule 60(b) is appropriate because Plaintiff filed the Motion more than 28 days after both the May 2019 Decision and December 2019 Order denying reconsideration. *See Montalban v. Powell*, 830 F. App'x 69, 71 (3d Cir. 2020) (noting that because neither motion "was made within 28 days of the challenged summary judgment as required under [Rule] 59. . . . it was appropriate to construe them as Rule 60(b) motions"); *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 230 (3d Cir. 2011).

*Sec'y of Health, Educ. & Welfare*, 572 F.2d 976, 977 (3d Cir. 1978).  However, it "may not be used to relitigate old issues, advance new theories or secure a rehearing on the merits." *Hilton v. Whitman*, No. 09-6420, 2008 WL 5272190, at *3 (D.N.J. Dec. 16, 2008).

### III.   DISCUSSION

The Court construes Plaintiff's submission as raising arguments under four of the six avenues available to challenge a judgment or order pursuant to Rule 60(b), particularly: (i) mistake, inadvertence, surprise, or excusable neglect; (ii) newly discovered evidence; (iii) fraud; and (iv) any other reason that warrants relief. *See* Fed. R. Civ. P. 60(b)(1)–(3) & (6); (*see also* Mov. Br. at 4 (citing corresponding subsections from N.J. Ct. R. 4:50-1(a)–(c) & (f))).[5]

***Mistake, Inadvertence, Surprise, or Excusable Neglect.***  A determination as to whether a party's neglect is excusable turns on equitable considerations. *United States v. Okorie*, 744 F. App'x 752, 754 (3d Cir. 2018) (citing *George Harms Construction Co., Inc. v. Chao*, 371 F.3d 156, 163 (3d Cir. 2004)).  The Court must consider "all relevant circumstances surrounding a party's failure" to act. *George Harms*, 371 F.3d at 163–64 (listing non-exclusive factors such as potential prejudice, the extent of delay and its impact on judicial proceedings, the reasons for delay, such as whether it was within the movant's control, and whether the movant acted in good faith (citing *Pioneer Investment Services v. Brunswisk Assoc.*, 507 U.S. 380, 395 (1993))).

Plaintiff argues that he "made a mistake" by neglecting to mention that certain state day-care licenses show that he and Remarkable Mossi were "certified licensed partner[s]" of the day-care center "from 2003 to 2015 with the City of Jersey City and the Redevelopment Agency." (Mov. Br. at 2 & 4).  However, Plaintiff has not shown excusable neglect.  Plaintiff has not explained the reasons for his delay in raising either this assertion about the licenses or any other evidence that forms the basis of his submission. (*See generally id.*).  Moreover, the licenses Plaintiff now proffers do not establish that Remarkable Mossi had a valid lease agreement after August 31, 2005, or that it satisfied its unpaid rent obligation. (*See* D.E. No. 135-6 at 37–43).  Similarly, the licenses do not establish that Plaintiff experienced discrimination based on his race.[6] (*See id.*).

***New Evidence.***  Under Rule 60(b) "newly discovered evidence" must consist of evidence that "(1) [is] material and not merely cumulative, (2) could not have been discovered prior to trial through the exercise of reasonable diligence, and (3) would probably have changed the outcome of the trial." *MZM Construction Co., Inc. v. New Jersey Building Laborers' Statewide Benefit Funds*, 2019 WL 3812889, at *10 (D.N.J. Aug. 14, 2019) (quoting *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991)); *Singleton v. Beadle*, 839 F. App'x 671, 674 (3d Cir. 2021).  The Third Circuit

---

[5]   Rule 60(c)(1) requires that motions under Rule 60(b)(1), (2), and (3) be filed "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). Plaintiff filed the Motion on December 1, 2020, days shy of one year from the Court's December 4, 2019 Order denying reconsideration of the May 2019 Decision. Thus, while the Rule 60(b)(1), (2), and (3) arguments are untimely as they relate to the May 2019 Decision, the Court will not penalize *pro se* Plaintiff because he arguably challenges *both* the May 2019 Decision and the December 2019 Order. (*See generally* Mov. Br.; D.E. No. 135-7).

[6]   In addition, Plaintiff's disagreement with the Court's characterization of Remarkable Mossi as a holdover tenant does not constitute a mistake in law, and Plaintiff proffers no alternative law for the Court's consideration. (*See* Reply at 2). For reasons stated below, in the event Plaintiff disputes the Court's application of landlord-tenant law, Plaintiff has not shown that Remarkable Mossi had a valid lease agreement for operation at the Bethune Center beyond August 31, 2005.

has cautioned that newly discovered evidence under Rule 60(b)(2) "is evidence of which the aggrieved party was excusably ignorant" at the time of the dispositive motion and was not discoverable with the exercise of due diligence. *Plisco v. Union R. Co.*, 379 F.2d 15, 16 (3d Cir. 1967) (internal quotations omitted); *Howmedica Osteonics Corp. v. Zimmer, Inc.*, No. 05-897, 2009 WL 2923077, at *2 (D.N.J. Sept. 9, 2009).

The new evidence Plaintiff cites does not meet this standard. In his submission, Plaintiff vehemently asserts that he received "newly discovered evidence [that] [D]efendant[s] hid from the [C]ourt." (Mov. Br. at 2–3). Plaintiff mentions (i) a certificate of occupancy for room 105 of the Bethune Center and (ii) a signed lease agreement between Jersey City and Remarkable Mossi, effective September 1, 2005, through August 31, 2020. (Mov. Br. at 1–2). Critically, however, Plaintiff does not explain how these documents—or any others he submitted in Docket Entry Number 135-6—were undiscoverable, despite his due diligence, before the Court rendered its May 2019 Decision or December 2019 Order. (*See* Pl. Cert. ¶ 8; *see also* Pl. Supp. at 14 & 18). Tellingly, Plaintiff's certifications, including one entitled "Certification as to the Authenticity of Attached Exhibits" (Pl. Supp. Cert.), do not provide any indication as to how or when he obtained the purportedly "new" documentation or anything regarding its authenticity. (*See id.*; *see also* Pl. Cert.). For these reasons alone, Plaintiff has not met his burden under Rule 60(b)(2). *See, e.g.*, *MZM Constr. Co.*, 2019 WL 3812889, at *10 (noting that the movant did "not present[] any evidence that the document was unusually inaccessible" or a "certification from a person with knowledge" regarding the process of obtaining the document); *State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 178 (2d Cir. 2004) (affirming the denial of a Rule 60(b)(2) motion where the movants offered no explanation for their failure to locate a newly-proffered document in their own files). Accordingly, none of the proffered evidence can form the basis of "newly discovered evidence" under Rule 60(b)(2).

Even if the Court considered the allegedly "new" lease agreement, a plain review reflects that it is identical to the lease submitted in connection with Plaintiff's cross-motion for summary judgment, with one major distinction—inclusion of a signature page that is noticeably different than the preceding pages. (*Compare* D.E. No. 100-3 at 11–16, *with* D.E. No. 135-6 at 19–28; *see* Opp. at 2 & 7). For example, the purportedly new lease has entirely different font on first nine pages than the signature page; the signature page is comprised of all bold lettering, while the preceding pages have non-bolded, regular typeface. (*Compare* D.E. No. 136-6 at 19–27, *with id.* at 28). Indeed, the signature page's organization, format, and substance stand in stark contrast to the preceding pages. The lease's first nine pages include headings that are centered, bolded, and underlined with numbers that are spelled out (*see, e.g.*, D.E. No. 135-6 at 19 ("**One Property**") & 27 ("**Twenty-Eight Force Majeure**")), while the last page contains headings that are preceded by actual numbers aligned to the left of the page (*see id.* at 28 ("**12)   Citizen Participation** . . . **13) Special Conditions**")). Furthermore, the numbered headings are entirely inconsistent, jumping from number "Twenty-Nine" to number "12" on the signature page; and, the pagination does not flow from the prior page. (*Compare id.* at 27 (page 12), *with id.* at 28 (page 5)). Perhaps most significant, the signature page Plaintiff included as part of the lease agreement is the *exact same* signature page in a document entitled "City of Jersey City CDBG Program Subgrantee Agreement" ("Subgrantee Agreement") dated August 25, 2005. (*Compare id.* at 28, *with id.* at 49). Thus, because a plain review of the "newly-discovered" lease reflects that the signature page originated from another document, the Court cannot credit Plaintiff's attempt to introduce it as "new"

evidence.[7]  In sum, Plaintiff's "newly-discovered evidence" would not alter the May 2019 Decision or December 2019 Order.  *See, e.g.*, *Singleton*, 839 F. App'x at 674; (*see also* Opp. at 2 & 7).

***Fraud.***  To prove fraud on the Court, Plaintiff must establish "(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court."  *Herring v. United States*, 424 F.3d 384, 386 (3d Cir. 2005).  The movant's proofs in support of fraud must be "clear, unequivocal and convincing."  *Id.* at 387.  And, "[t]o prevail on a Rule 60(b)(3) motion, a movant must establish that the adverse party engaged in fraud or other misconduct, and that this conduct prevented the moving party from fully and fairly presenting his case."  *Singleton*, 839 F. App'x at 674 (internal quotations omitted).  The Third Circuit has commented that "[l]itigants routinely disagree about how courts should view evidence.  But the losing party cannot just repackage that disagreement to claim that the winning party committed fraud on the court."  *800 Servs., Inc. v. AT&T Corp.*, 822 F. App'x 98 (3d Cir. 2020), *cert. denied*, 141 S. Ct. 1390 (2021).

Plaintiff maintains that Defendants knowingly submitted one or more void lease agreements and licenses that the Court considered in rendering its May 2019 Decision.  (*See generally* Mov. Br.; *see also* Pl. Supp. at 2).  Plaintiff also claims that Defendants engaged in a history of corruption and made "gross misrepresentations" to federal and state judiciaries. (Mov. Br. at 2–3, 5 (claiming that Defendants' position, that Plaintiff never had an agreement to lease the Bethune Center before July 2005, is willfully false) & 7; *see also* Pl. Supp. at 18 & 22).  These contentions of fraud, however, are not substantiated "by clear, unequivocal and convincing" proofs.  *See Herring*, 424 F.3d at 387.  For example, other than bare assertions, Plaintiff provides no evidence of: (i) the submission of false documents during motion practice; (ii) Defendants' purported history of corruption; or (iii) Defendants' alleged gross misrepresentations or willfully false statements.  (*See generally* Mov. Br.); *see Singleton*, 839 F. App'x at 674 (finding that the movant's Rule 60(b)(3) "argument—largely based on his own interpretation of the sparse physician's notes offered as 'new' evidence—was that [d]efendant . . . falsified his dental records. . . . This allegation was entirely conclusory, and therefore the District Court did not abuse its discretion in denying [the movant's] relief").  Because Plaintiff has not shown that a fraud on the Court occurred, his Rule 60(b)(3) argument must fail.

***Any Other Reason that Justifies Relief.***  The standard under Rule 60(b)(6) presents a high bar.  "[A] movant seeking relief under Rule 60(b)(6) [must] show 'extraordinary circumstances' justifying the reopening of a final judgment."  *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).  As

---

[7] The Subgrantee Agreement and corresponding HUD letter dated August 11, 2005, attached to the current Motion appear to cover a different period than the HUD letter described in the Court's May 2019 Opinion. (*Compare* D.E. No. 135-6 at 44–49, *with* May 2019 Op. at 6–8).  However, even assuming the appropriate parties signed the Subgrantee Agreement for 2005 through 2006, the Court's prior reasoning remains true.  There is no indication that the $16,000 CDBG would be applied to Remarkable Mossi's rent, nor is it apparent that the DCD approved Plaintiff's expenses (specifically for rent) or that Plaintiff complied with the letter's directives.  (*See* D.E. No. 135-6 at 44).  Moreover, even if Plaintiff received this funding, he provides no explanation for Remarkable Mossi's unpaid rent obligation, and the funding does not support a claim of racial discrimination.  *See Hopkins v. Trenton Bd. of Educ.*, 785 F. App'x 78, 80–81 (3d Cir. 2019) (upholding the District Court's ruling that plaintiff's "newly discovered evidence did not alter its decision because he had not shown any discriminatory conduct").

Finally, the Court does not consider the exhibits attached to Plaintiff's most recent submission dated August 13, 2021.  (D.E. Nos. 141-1, 141-2, 141-3 & 141-4).  First, Plaintiff submitted these exhibits eight months after his reply brief dated January 12, 2021.  Furthermore, the exhibits contain various state court filings for proceedings other than the eviction that was the subject of the May 2019 Decision.

such, a Rule 60(b) motion will not be granted unless the movant establishes that absent relief "an extreme and unexpected hardship will result." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3d Cir. 2008) (internal quotations omitted).

This matter does not present "extraordinary circumstances" sufficient to trigger Rule 60(b)(6). *See Buck v. Davis*, 137 S. Ct. 759, 777–78 (2017) ("Rule 60(b) vests wide discretion in courts, but we have held that relief under Rule 60(b)(6) is available only in 'extraordinary circumstances.'"); *Oriakhi v. Bureau of Prisons*, No. 07-264, 2012 WL 4959458, at *3 (D.N.J. Oct. 17, 2012) (noting that "[e]xtraordinary circumstances 'rarely exist when a party seeks relief from a judgment that resulted from the party's deliberate choices'" (quoting *Budget Blinds*, 536 F.3d at 255)). The Court considers, but does not find, that failure to alter or amend its prior decisions would create an injustice or unexpected hardship for Plaintiff. At most, Plaintiff's Motion reflects mere dissatisfaction with the Court's prior adverse decisions.

### IV.    CONCLUSION

For the reasons stated above, Plaintiff's motion to vacate is DENIED.

Accordingly, IT IS on this 27th day of September, 2021,

**ORDERED** that Plaintiff's Motion is DENIED.

*/s/ Esther Salas*
**Esther Salas, U.S.D.J.**